OPINION
On August 20, 1998, Capitol Mortgage Services, Inc. ("Capitol"), filed a lawsuit against John Hummel, its former employee. Capitol alleged that Mr. Hummel had violated the terms of a covenant not to compete when Mr. Hummel had accepted employment with Macloud Financial, Inc. ("Macloud"). Capitol sought both monetary damages and injunctive relief. Counsel for Capitol served subpoenas for depositions for September 1, 1998 and a list of documents to be brought to the depositions. Apparently, Capitol filed lawsuits against two other employees of Macloud at the same time and scheduled depositions with respect to these other two employees for the same date.
Counsel for Macloud filed motions to quash the subpoenas issued to Macloud on August 28, 1998. Counsel for Capitol responded with a memorandum contra on September 1, 1998 and requested sanctions under Civ.R. 45(E) because Macloud had not provided the documents requested.
On September 2, 1998, attorneys John W. Ferron and Sloan T. Spalding entered appearances as counsel for Jon Hummel. Apparently, the same attorneys also entered appearances on behalf of the other two employees, Len Finelli and Steve Gombosch. The attorneys moved to consolidate the three lawsuits. Counsel for Capitol resisted the consolidation, but the motion was sustained.
On October 5, 1998, an answer and counterclaim was filed on behalf of Mr. Hummel and the other named defendants.
On October 14, 1998, the defendants filed a motion for partial summary judgment. In the meantime, disagreements about discovery continued and Capitol filed a motion seeking additional time to respond to the defendants' discovery requests. Counsel for the three former employees resisted an extension of time, filing a memorandum contra on November 6, 1998. On November 12, 1998, counsel for Capitol filed a reply memorandum. Eventually, a protective order was granted.
In the meantime, settlement negotiations were being pursued, with Macloud and its counsel being involved in the negotiations. At some point in time a question arose as to whether Mr. Ferron still represented Steve Gombosch. This question was presented in the context of whether or not Mr. Gombosch had accepted an offer of settlement against Mr. Ferron's recommendation.
On December 10, 1998, the trial court entered an amended case scheduling order, setting forth deadlines for disclosure of witnesses and various other requirements. Trial was scheduled for August of 1999. The order was served on Mr. Ferron and Mr. Spalding as attorneys for the named defendants.
On January 6, 1999, counsel for Capitol filed its initial disclosure of witnesses and served a copy of the document upon Mr. Ferron.
On February 3, 1999, new counsel was entered on behalf of a third-party defendant who had been named. Again, Mr. Ferron was served as counsel for the defendants.
On February 5, 1999, Mr. Ferron, acting as counsel for Len Finelli and Jon Hummel, filed a motion requesting that the law firm which represented Capitol be barred from further representation of Capitol on a theory that the firm had communicated with Steve Gombosch while Mr. Ferron still represented Mr. Gombosch. Discovery was stayed while the motion was awaiting a ruling.
On March 1, 1999, counsel for Capitol filed a memorandum contra and an affidavit signed by Mr. Gombosch regarding the dates of his representation by Mr. Ferron and Mr. Gombosch's views of when the attorney-client relationship ended. Mr. Gombosch also alleged that he had not told anyone except his wife and his new attorney about any conversations he had had with Mr. Ferron.
On April 5, 1999, the trial judge overruled the motion to bar representation. On August 30, 1999, counsel for Capitol filed a motion seeking sanctions under Civ.R. 11 and R.C. 2323.51 and requested a hearing no later than twenty-one days after entry of judgment. Counsel for Capitol alleged that the motion seeking disqualification of the firm had been frivolous.
Discovery resumed and the parties resumed having difficulty in that area of the lawsuit. The trial date was delayed until February 14, 2000.
A hearing on the motion for sanctions was scheduled and rescheduled before three different magistrates. Mr. Ferron subpoenaed witnesses for a hearing regarding the motion scheduled for January 10, 2000. One of the witnesses was the attorney for Macloud, who was commanded to bring a variety of documents regarding the settlement involving Mr. Gombosch. The attorney and his firm responded with a motion to quash.
The law firm Mr. Ferron had been seeking to disqualify also was subpoenaed. It also filed a motion to quash. The trial court ruled on the motions to quash the day after they were filed and before Mr. Ferron had an opportunity to respond. The trial judge also restricted the scope of the hearing before the magistrate "to the determination of the financial sanction to be imposed against Attorney Ferron and/or defendant as a result of : (1) the filing of the Motion to Disqualify and Bar Representation; and (2) failure to cooperate with discovery * * *."
On January 14, 2000, counsel for Macloud filed a motion seeking "reimbursement of expenses associated with subpoena issued by defendant to movant." Mr. Ferron filed a memorandum contra in response. Counsel for Macloud filed a reply.
On February 8, 2000, Capitol and Jon Hummel filed a stipulation of dismissal of the underlying lawsuit and a stipulation of withdrawal of all pending motions "filed by either party."
On February 16, 2000, the trial court referred to the motion filed on behalf of Macloud to a magistrate "to determine the following: (1) whether Attorney Kessler and his law firm were, in fact, subjected to an undue burden by defendant and Attorney Ferron in the issuance of their subpoenas; and (2) if so, the appropriate amount of the sanctions to be assessed against defendant and/or Attorney Ferron."
The parties disagreed as to whether the settlement and dismissal of the underlying case also disposed of the motion filed by Attorney Kessler. The trial court ordered the matter to proceed to a hearing.
A hearing was held on May 5, 2000, and a magistrate's decision was filed May 15, 2000. The magistrate's decision included findings that the court retained jurisdiction and that a financial sanction should be assessed against Mr. Ferron.
On June 2, 2000, the trial court adopted the magistrate's decision. In its decision and entry, the trial court noted that no party had filed objections to the magistrate's decision. Later on this same day, Mr. Ferron filed objections to the magistrate's decision. Such objections included an assertion that service of the magistrate's decision was improper under Civ.R. 53. On June 30, 2000, a direct appeal was initiated by Mr. Ferron and his client. Mr. Ferron and Mr. Hummel (hereinafter "appellants") assign six errors for our consideration:
 I. The trial court committed reversible error in issuing its January 6, 2000 decision and entry sustaining appellees' motion to quash.
 II. The trial court erred as a matter of law in asserting jurisdiction and issuing any further rulings after February 8, 2000, when the trial court unequivocally approved the termination of the case upon the parties' submission of a stipulation of dismissal with prejudice.
 III. The trial court erred in overruling defendant's April 18, 2000 motion for rescission.
 IV. The trial court erred as a matter of law in adopting the magistrate's May 15, 2000 decision and refusing to consider and rule upon appellant's objections.
 V. The trial court erred in imposing sanctions against appellant Ferron because he did not issue or serve the subpoenas on appellees.
 VI. The trial court erred in awarding appellees an amount that exceeds their actual costs in securing the court's January 6, 2000 order quashing appellant's subpoenas.
As it is dispositive of the remaining assignments of error, the fourth assignment of error will be addressed first. Appellants contend the magistrate's decision was never properly served by the clerk as mandated by Civ.R. 53. Civ.R. 53(E)(1) states, in pertinent part:
 * * * The magistrate shall prepare, sign, and file a magistrate's decision of the referred matter with the clerk, who shall serve copies on all the parties or their attorneys.
The record on appeal does not reflect appropriate service of the magistrate's decision by the clerk in accord with Civ.R. 53(E)(1). We note that in 1995, Civ.R. 53 was significantly amended. As a result of these amendments, a trial court, in the absence of written objections or an erroneous or patently defective magistrate's decision, is no longer required to make an independent analysis of the issues. Miele v.Ribovich (2000), 90 Ohio St.3d 439, 443. In addition, a party may not assign as error on appeal the trial court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion. Civ.R. 53(E)(3)(b).
Given the limited review of the magistrate's decision by both the trial court and the appellate court when proper objections are not filed, proper service of the magistrate's decision pursuant to the mandatory language in Civ.R. 53(E)(1) is necessary so that objections, if any, may be timely and properly filed. As proper service of the magistrate's decision did not occur here, the time for filing objections thereto did not begin to run on the date the magistrate's decision was filed. Hence, the objections filed by Mr. Ferron were not untimely and should have been considered by the trial court before it adopted the magistrate's decision.
Accordingly, the fourth assignment of error is sustained for the reasons set forth above. Having sustained the fourth assignment of error, the remaining assignments of error are rendered moot. Because we believe that the trial court should independently rule on the issues as to whether or not the subpoena of the Kessler firm was a frivolous action and, if so, what sanctions should attach, we vacate the trial court's judgment and remand the cause for further proceedings.
McCORMAC, J., concurs, LAZARUS, J., dissents.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.